**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 24-1224-KHV |
| $25,411.89 in UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

On May 18, 2022, the Honorable John W. Broomes sentenced Roger Moss to 255 months in prison and ordered him to forfeit $25,411.84 in drug proceeds which officers had seized from his apartment. See Amended Judgment In A Criminal Case (Doc. #136) filed in United States v. Moss, D. Kan. No. 20-10038-01-JWB. On October 22, 2024, the Tenth Circuit affirmed Mr. Moss's convictions and sentence, but vacated the forfeiture order. See United States v. Moss, No. 22-3101, 2024 WL 4541738 (10th Cir. Oct. 22, 2024), cert. denied, 145 S. Ct. 1461 (2025). On December 10, 2024, the government filed this civil forfeiture action which arises from the seizure of $25,411.89 from Mr. Moss's apartment.[1] This matter is before the Court on the Motion To Suppress Evidence Seized In Relation To Civil Forfeiture (Doc. #45) which Mr. Moss filed March 3, 2026. For reasons stated below, the Court overrules claimant's motion.

**Factual Background**

On June 16, 2020, in the District of Kansas, a grand jury returned an indictment which charged Mr. Moss with possession with intent to distribute methamphetamine, heroin and cocaine,

---

[1]    In this civil action, the government seeks forfeiture of a slightly different amount (five cents more).

possession of a firearm in relation to a drug trafficking crime and being a felon in possession of a firearm.  In that criminal case, the Honorable John W. Broomes overruled Mr. Moss's motion to quash a warrant for a GPS tracker of his vehicle.  See United States v. Moss, No. 20-10038-01-JWB, 2021 WL 5371491 (D. Kan. Nov. 17, 2021), aff'd, 2024 WL 4541738 (10th Cir. Oct. 22, 2024).  In doing so, Judge Broomes found as follows:

> Here, the government's affidavit provided a "substantial basis" for the issuing judge's probable cause determination.  For starters, the affidavit notes that James Shaw and Carol Robinson were caught by police while engaging in drug-related criminal activity.  (Doc. 64-1 at 2-3.)  Following their arrests, both decided to give details surrounding their involvement in drug trafficking.  First, Shaw elaborated that he buys 1–3 ounces of cocaine on a weekly basis from a black man named "Reggie."  Shaw further detailed that Reggie alternates between driving a black Ford Taurus and a black Chevrolet pickup truck when he delivers drugs— including crack cocaine, methamphetamine, marijuana, and narcotic pills.  Despite Shaw telling officers he would not assist with future investigations surrounding Reggie, he did allow officers to look through his phone and retrieve Reggie's phone number.  This information prompted the affiant officer to run a records check, which resulted in discovering that Moss reported using the phone number associated with Reggie.  Notably, officers soon thereafter discovered that Moss owns and operates both a black Ford Taurus and a black Chevrolet pickup truck.
>
> Second, Robinson was interviewed, post Miranda, and stated she is addicted to crack cocaine and sells crack to pay for her drug addiction. Robinson further detailed that she buys crack cocaine from two different black males between the ages of 30 and 40.  Robinson continued by stating one of her drug suppliers drives a black four door sedan.  While Robinson refused the officers' request to provide the sedan owner's name, she did state that he goes by a nickname.  At this point, one of the officers began listing common [nicknames] such as Thomas, John, and Reggie.  Robinson then became quiet and appeared nervous before explaining to officers that she was worried they were going to arrest her drug supplier.  Robinson stated the police now knew his nickname and that he drives a black four door sedan. Albeit a weaker inference, the affiant officer stated he believed Robinson was referring to Moss' alias of "Reggie" and his black four door Taurus.  However, more importantly, the affidavit detailed that the day before Robinson was apprehended a surveilling officer spotted Moss' black Taurus parked in front of Robinson's residence.  Additionally, the affiant officer employed the License Plate Reader system and discovered that on July 28, 2019, Moss' black Chevrolet truck was parked in the general area of Robinson's residence.
>
> Next, the affiant officer conducted a records check and discovered that on December 5, 2018, Moss was stopped for a traffic violation in his black Taurus.

Once stopped, the officer requested Moss step out of the vehicle, at which point the officer stated that he saw Moss "throwing a large quantity of U.S. currency and clear baggie with several Hydrocodone pills, Lortab pills, and approximately 1 ounce of crack cocaine." (Doc. 64-1 at 3.)  Following this, the officer searched Moss' vehicle and found approximately $2,461, a digital scale, and a handgun. Equipped with this information, the affiant officer located Moss' apartment and conducted seven trash pulls from a communal dumpster.  All seven attempts to collect trash from Moss' apartment were unsuccessful.  Because of this, in combination with Moss' apartment having "an alley way effect making traditional surveillance techniques ineffective[,]" the affiant officer believed "a GPS tracker is the only effective means of surveilling [Moss] during illegal drug deals."  (Id. at 3-4.)

After reviewing the affidavit, the court finds the issuing judge had a substantial basis to conclude there was probable cause that Moss' Taurus was being used in drug trafficking activity.  The affidavit focused on Moss' Taurus and tying it to the residences of both Shaw and Robinson.  Shaw provided officers with specific information about both of Moss' vehicles and his phone number.  While less helpful, Robinson still provided specific enough information to create an inference that Moss might be her drug dealer.  Independently of Robinson, the affidavit noted two instances of Moss' vehicles being found at or near Robinson's residence, with one of those times being the day before her residence was searched. Further, the affidavit illustrated by pointing to the December 5, 2018 traffic stop that Moss had prior involvement with narcotics and, it would appear, narcotics trafficking due to the fact that he had a digital scale and gun.  Accordingly, the court finds the issuing judge had a substantial basis for concluding that probable cause existed and upholds the issuance of the search warrant.

2021 WL 5371491, at *2–3 (footnotes omitted).

Judge Broomes also overruled Mr. Moss's motion to suppress evidence which officers obtained from a search of his apartment on January 21, 2020, pursuant to a search warrant.  In doing so, Judge Broomes found as follows:

As noted previously, the information from the application for the first GPS warrant was sufficient to establish probable cause to believe Defendant was dealing drugs. Substantially the same information was included in the application for the warrant to search his apartment.  The real question here was whether the application established the required nexus to Defendant's apartment.  The court agrees with the government's arguments at the Hearing concerning the affidavit containing newly obtained information flowing from the original GPS warrant.  After installing the GPS unit on Moss' Taurus on December 4, 2019, Moss "made over 40 stops at both residences and parking lots.  Most of the stops lasted two to four minutes, which is consistent with selling narcotics." (Doc. 65-1 at 8.)  Specifically, the GPS showed

that Moss visited Robinson's residence six times, Shaw's residence four times, and April Harding's—previously arrested for possession of crack cocaine—residence three times. Additionally, on December 13, 2019, officers executed a second narcotics search warrant at Shaw's residence, and once again located cocaine, crack cocaine, and over $5,000 in U.S. currency. During questioning related to that search, Shaw stated that Moss drove to his residence the previous day—which GPS information corroborated—to give him cocaine to sell in order to pay his debts owed to Moss.

Finally, the affidavit in support of this search warrant indicated that the affiant office[r] and another officer analyzed the data obtained from the GPS tracker on Defendant's car for any indication that Defendant was using a stash house or other location to store drugs. The affidavit indicated that if Defendant was using a stash house to store drugs, the affiant would have expected to see the GPS data indicating stops at such a location prior to Defendant delivering drugs to other persons. Accordingly, the affiant informed the magistrate judge that after reviewing all the GPS data and other evidence, it was his belief that the suspected drugs were likely stored at Defendant's apartment.

Based on the foregoing, the court finds there was a sufficient nexus between the suspected criminal activity and the place to be searched, and, further, that the magistrate had a substantial basis for concluding probable cause existed to issue the search warrant.

2021 WL 5371491, at *5.

On December 17, 2021, a jury found Mr. Moss guilty of possession with intent to distribute methamphetamine, heroin and cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts 1–3), possession of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 4) and possession of a firearm while an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g) (Count 5). Verdict (Doc. #120 in No. 20-10038-01-JWB). The jury also found that the $25,411.84 in cash which officers seized from Mr. Moss's residence constituted or derived from proceeds of his offenses for possession of a controlled substance with intent to distribute. Special Verdict Form For Forfeiture (Doc. #121 in No. 20-10038-01-JWB) filed December 20, 2021 at 1–2.

On May 18, 2022, Judge Broomes sentenced Mr. Moss to 255 months in prison and

ordered him to forfeit $25,411.84 in drug proceeds.  On appeal, the Tenth Circuit affirmed Mr. Moss's convictions and sentence, but vacated the district court's forfeiture order.  2024 WL 4541738, at *6.  In doing so, the Tenth Circuit noted that the government conceded that the evidence at trial failed to establish the required nexus between the cash in Mr. Moss's residence and an offense of conviction.[2]  Id.  On March 24, 2025, the United States Supreme Court denied Mr. Moss's petition for certiorari.  145 S. Ct. 1461.

On December 10, 2024, the government filed this civil forfeiture action, which arises from the seizure of $25,411.89 from Mr. Moss's apartment.  Defendant asks the Court to suppress evidence which officers unlawfully seized from his apartment.

## Legal Standards

Forfeiture proceedings are inherently civil in nature, but they have a quasi-criminal nature and are meant to penalize the criminal offender.  See One 1968 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 696–97 (1965).  A claimant therefore can assert that forfeiture of property resulted from a violation of his constitutional rights.  United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two & 43/100 Dollars ($149,442.43) in U.S. Currency, 965 F.2d 868, 872 (10th Cir. 1992).  To prove a claim of forfeiture, the government cannot introduce evidence illegally seized in violation of the Fourth Amendment.  See id.  Therefore, any defects in the process used to secure possession of defendant property may defeat the government's right to possession.  See id.

---

[2]    On appeal, the government agreed that the district court erred in ordering forfeiture of cash as proceeds of the specific offenses for possession with intent to distribute.  See Answering Brief For The United States (Doc. #76 in United States v. Moss, 10th Cir. No. 22-3101) filed April 19, 2023 at 12.  The government acknowledged that to the extent that the cash was proceeds of a drug transaction, it could not be proceeds of drugs that defendant possessed on the date that officers arrested him.  See id. at 50–51.

The Court construes plaintiff's pro se filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court does not, however, assume the role of advocate for a pro se litigant.  Id.  A pro se litigant must "follow the same rules of procedure that govern all other litigants."  Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994).

**Analysis**

Mr. Moss argues that pursuant to Bailey v. United States, 568 U.S. 186 (2013), the Court must suppress "evidence seized in this in rem civil forfeiture proceeding."  Motion To Suppress Evidence Seized In Relation To Civil Forfeiture (Doc. #45) at 5.  In his motion, Mr. Moss does not identify specific evidence that officers unlawfully seized.  In reply, he asserts that because officers unlawfully arrested him, the Court must suppress all evidence that officers seized from his apartment thereafter, under the fruit of the poisonous tree doctrine.  Reply In Support Of Claimant's Motion To Suppress (Doc. #50) at 1.

Detentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake.  Bailey, 568 U.S. at 202.  Specifically, officers have three law enforcement interests in detaining an occupant during the execution of a search warrant: officer safety, facilitating the completion of the search and preventing flight.  United States v. Ronquillo, 94 F.4th 1169, 1175 (10th Cir. 2024); see Michigan v. Summers, 452 U.S. 692, 702–03 (1981).  Detention of an individual pursuant to a search warrant, however, must occur within the "immediate vicinity of the premises to be searched."  Bailey, 568 U.S. at 201.  Mr. Moss argues that because officers did not detain him in the immediate vicinity of his apartment, the Court should suppress evidence seized from the apartment.

Mr. Moss argues that officers detained him some two miles from his apartment so that they could execute the search warrant at his apartment. The government notes that officers detained and eventually arrested Mr. Moss because they had probable cause to believe that he had committed the crime of distributing narcotics to Shaw. Mr. Moss does not dispute that officers had probable cause to arrest him—he merely claims that the arresting officer stated a different reason, i.e. that "he was detaining Moss in preparation of effectuation of a search warrant" and that "it would be safer to detain Mr. Moss outside the home." Reply In Support Of Claimant's Motion To Suppress (Doc. #50) at 2. Because probable cause is measured against an objective standard, the subjective belief of the arresting officer is not dispositive. See United States v. Davis, 197 F.3d 1048, 1051 (10th Cir. 1999). Based on the information set forth in the affidavits for a search warrant for Mr. Moss's apartment—as outlined in Judge Broomes's ruling—the officers had probable cause to believe that Mr. Moss had committed the crime of distributing narcotics to Shaw. 2021 WL 5371491, at *2–5. Mr. Moss therefore has not shown that his arrest was unlawful. See United States v. Madden, 682 F.3d 920, 926 (10th Cir. 2012) (warrantless arrest justified if officers have probable cause to believe person is committing or has committed crime).

Even if officers had unlawfully arrested Mr. Moss, the Court would not exclude evidence which officers seized from his apartment. To suppress evidence as fruit of the poisonous tree, i.e. evidence discovered as a direct result of unlawful activity, Mr. Moss must show the requisite factual nexus between the illegality and the challenged evidence. Wong Sun v. United States, 371 U.S. 471, 485 (1963); United States v. Olivares-Rangel, 458 F.3d 1104, 1108–09 (10th Cir. 2006). As explained above, in the criminal case, Judge Broomes overruled Mr. Moss's motion to suppress evidence which officers obtained from his apartment during the execution of the search warrant. The Tenth Circuit affirmed. Under collateral estoppel principles, Mr. Moss cannot challenge the

-8-

validity of the search warrant for his apartment.  See United States v. One Parcel of Real Prop. Known as 16614 Cayuga Rd., 69 F. App'x 915, 918 (10th Cir. 2003) (collateral estoppel prevents claimant from raising in forfeiture proceeding constitutional issues that were litigated in prior criminal action); see also United States v. U.S. Currency in the Amount of $228,536.00, 895 F.2d 908, 918–21 (2d Cir. 1990) (collateral estoppel prevents litigation in civil forfeiture proceeding Fourth Amendment issue raised during suppression hearing in prior criminal action).  Because officers had obtained a valid search warrant for Mr. Moss's apartment before they stopped him, he cannot show a nexus between any illegality in his arrest and the officers' seizure of the evidence from his apartment.  The Court therefore overrules Mr. Moss's motion to suppress.

**IT IS THEREFORE ORDERED** that the Motion To Suppress Evidence Seized In Relation To Civil Forfeiture (Doc. #45) which Roger L. Moss filed March 3, 2026 is **OVERRULED**.

Dated this 7th day of July, 2026 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge